# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **McFARLAND, LP, SPRING VILLAGE APARTMENTS, LLC, and SPRING VILLAGE, LP,** : <br> : <br> **Plaintiffs** : <br> : <br> v. : <br> : <br> **HARFORD MUTUAL INSURANCE COMPANIES and FIRSTLINE NATIONAL INSURANCE COMPANY,** : <br> : <br> **Defendants** : | CIVIL ACTION NO. 1:18-CV-1664 <br><br> (Chief Judge Conner) |

## **MEMORANDUM**

This case involves an insurance dispute over property damage caused by the collapse of a retaining wall. Plaintiffs McFarland, LP; Spring Village Apartments, LLC; and Spring Village, LP (collectively, "McFarland") sued defendants Harford Mutual Insurance Company ("Harford") and Firstline National Insurance Company ("Firstline"), alleging, *inter alia*, breach of contract and bad faith. Firstline moves to sever and to stay the bad faith claim, (Doc. 12), and seeks a protective order and to quash an attorney deposition, (Doc. 16). The court will deny Firstline's motion to sever, but we will permit bifurcation. We will also conditionally grant Firstline's motion for a protective order and to quash the notice of deposition for its attorney.

I. **Factual Background & Procedural History**[1]

McFarland owns real property in Harrisburg, Pennsylvania ("the Property") that includes two apartment buildings—a larger building with 41 apartments and a smaller, 8-unit building. (Doc. 1-4 ¶ 22).[2] The Property is insured for liability and property damage by a businessowners policy with defendant Firstline. (Id. ¶¶ 31-33; Doc. 1-4, Ex. B at 3, 19). On May 5, 2016, a retaining wall unexpectedly collapsed, damaging McFarland's smaller apartment building, its parking lot, and several other property owners' buildings adjacent to the Property. (Doc. 1-4 ¶¶ 24-26, 28-29). The significant damage from the retaining wall collapse caused the City of Harrisburg to declare the smaller apartment building unsafe for occupancy and the parking lot structurally unfit for parking. (Id. ¶¶ 27, 29).

Firstline denied first-party coverage for damage to the Property. (Id. ¶ 43; Doc. 1-4, Ex. E). Firstline agreed, however, to provide liability coverage under the policy—up to policy limits—for damage caused to other properties not owned by McFarland. (Doc. 1-4, Ex. D; Docs. 4, 5). McFarland filed suit against Harford, Firstline, and numerous other defendants in the Court of Common Pleas for Dauphin County, Pennsylvania, and the action was subsequently removed to this court. In its complaint, McFarland asserts three causes of action: breach of contract

---

[1] The factual background is primarily derived from the pleadings, as fact discovery is ongoing and no dispositive motions have been filed.

[2] The docket entry containing McFarland's complaint includes both the complaint itself (Doc. 1-4 at 2-28) and eight exhibits (Doc. 1-4 at 29-401), spanning a total of more than 400 pages. For ease of reference, citations to the complaint will appear as "Doc. 1-4 ¶ __" and citations to exhibits appended to the complaint will appear as "Doc. 1-4, Ex. __ at __."

for denial of first-party coverage (Count I); declaratory judgment regarding liability coverage (Count II); and insurance bad faith pursuant to 42 PA. CONS. STAT. § 8371 (Count III). The parties later dismissed Count II by stipulation. The stipulation also dismissed the other named defendants, leaving only Harford and Firstline.

Firstline moves to sever and to stay the bad faith claim. Firstline raises concerns that certain discovery requests regarding the bad faith claim implicate attorney-client privilege and the work product doctrine, as well as potential disqualification of Firstline's counsel, Attorney Peter J. Speaker ("Attorney Speaker"). Relatedly, Firstline moves to quash the notice of deposition of Attorney Speaker and seeks a protective order. The motions are fully briefed and ripe for disposition.

## II. Discussion

Firstline's motions are inextricably interwoven. If the motion to sever and to stay the bad faith claim is granted, approval of the motion to quash the deposition notice of Attorney Speaker and for a protective order likely follows, at least as it relates to the breach of contract claim. The converse is likewise true. Accordingly, as a threshold matter, we will address the motion to sever and to stay.

### A. Motion to Sever and Stay Bad Faith Claim

Federal Rule of Civil Procedure 21 permits severance of claims. The rule states, in pertinent part, that the court may "sever any claim against a party." FED. R. CIV. P. 21. Courts and litigants routinely conflate severance with bifurcation, which is governed by Federal Rule of Civil Procedure 42(b). See 9A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2387 (3d ed. 2015). Unlike

3

bifurcation of claims under Rule 42(b), severance under Rule 21 creates independent actions resulting in separate judgments. White v. ABCO Eng'g Corp., 199 F.3d 140, 145 n.6 (3d Cir. 1999); 9A WRIGHT & MILLER, *supra*, § 2387.

Severance is appropriate when the claims are "discrete and separate," each capable of resolution without dependence or effect on the other. See Gaffney v. Riverboat Servs. of Ind., Inc., 451 F.3d 424, 442 (7th Cir. 2006) (citations omitted). The Third Circuit Court of Appeals has not established specific parameters for deciding a motion to sever claims. District courts often consider (1) whether the issues sought to be severed are significantly different from one another and would require distinct evidentiary proof; (2) whether severance would promote judicial economy; and (3) whether either party will be unduly prejudiced by severance or its absence. See Official Comm. of Unsecured Creditors v. Shapiro, 190 F.R.D. 352, 355 (E.D. Pa. 2000) (citation omitted). These same considerations are frequently utilized when examining a motion to bifurcate claims under Rule 42(b). See, e.g., Griffith v. Allstate Ins. Co., 90 F. Supp. 3d 344, 346 (M.D. Pa. 2014); Goldstein v. Am. States Ins. Co., No. 18-CV-3163, 2018 WL 6198463, at *1-2 (E.D. Pa. Nov. 28, 2018) (citing Shapiro, 190 F.R.D. at 355).

Firstline's motion to sever and to stay the bad faith claim from the underlying coverage claim is hardly novel. Such motions have been litigated extensively in both state and federal courts, with inconsistent results. See, e.g., Eizen Fineburg & McCarthy, P.C. v. Ironshore Speciality Ins. Co., 319 F.R.D. 209, 212 n.4 (E.D. Pa. 2017) (collecting cases refusing to sever or bifurcate); (Doc. 15 at 11-12, 13-14 & n.1 (same); Doc. 14 at 6-7 & n.1 (collecting cases granting severance or bifurcation)).

Firstline's arguments in support of severance are also largely identical to those raised by insurers in other cases: irreparable prejudice from premature and potentially unnecessary disclosure of otherwise privileged information, inefficiency in litigating a secondary claim of bad faith that may be mooted by resolution of the coverage claim, and jury confusion and the potential loss of Firstline's chosen counsel if the claims proceed together. We examine each of these arguments through the prism of the factors applicable to a motion to sever claims.

### 1. *Distinct Claims and Evidence*

Firstline asserts that the breach of contract claim is fundamentally distinct from the bad faith claim and will require different evidence. The breach of contract dispute, Firstline posits, involves simple issues like the cause and extent of property damage for which first-party coverage is claimed. The bad faith claim, *per contra*, "turns on the knowledge, motives, and actions of insurance personnel" in investigating, evaluating, and handling the claim. (Doc. 14 at 11). Firstline likewise asserts that most of the evidence related to the bad faith claim, which will focus on the knowledge and motives of the insurer in denying coverage, is irrelevant to the breach of contract claim, and vice versa.

We agree. There may be some minor overlap, but in general the issues underlying the coverage dispute are separate and distinct from those implicated by the bad faith claim. Breach of contract for property insurance coverage involves straightforward issues such as causation, damages, and contract interpretation. Bad faith, on the other hand, deals with more elusive concepts like motive, internal claims-handling practices, and scienter—*viz.*, knowing or reckless disregard of a

5

lack of a reasonable basis for denial of coverage. See Rancosky v. Wash. Nat'l Ins. Co., 170 A.3d 364, 377 (Pa. 2017). Bad faith also requires a higher evidentiary showing of clear and convicing evidence. Id. And, as Firstline notes, much of the evidence regarding bad faith would be irrelevant to the breach of contract claim. Information concerning how Firstline investigated and evaluated the coverage claim, its claims-handling policies, and its attorney and personnel communications regarding denial of coverage (which Firstline acknowledges as relevant to insurance bad faith) are simply immaterial to the issue of whether coverage is required under the policy.

McFarland's arguments to the contrary are unavailing. McFarland broadly contends that "[m]uch of the same evidence" is relevant to the two claims and that Attorney Speaker is "a fact witness" for both. (Doc. 15 at 11, 13). McFarland, however, fails to identify any overlapping evidence, and, although baldly claiming that Attorney Speaker "has information about the cause and extent of the loss," (id. at 13), does not specify what that information may be or why it could not be obtained through other means besides deposing Attorney Speaker. We decline to speculate as to what evidence may possibly overlap on these claims or what "factual" knowledge Attorney Speaker may have that could not be discovered through interrogatories or requests for production of documents. This factor, accordingly, weighs in favor of separating the claims.

### 2. *Prejudice*

Firstline asserts that if discovery and trial move forward on both claims concurrently it will suffer undue prejudice. According to Firstline, confidential

information concerning its attorney's advice, opinions, and strategy—otherwise undiscoverable for a general coverage dispute—would be fair game for McFarland due to the bad faith claim.  This inequitable preview of Firstline's "gameplan" for the breach of contract claim could not be undone.  McFarland counters that it would be prejudiced if severance were granted because it would be required to litigate and potentially try two cases instead of one, causing unnecessary expense and delay.

We find that although both parties have proffered potential prejudice, Firstline's likely injury from denying separation of these claims outweighs the possible increased costs identified by McFarland.  As Firstline correctly notes, attorney-client privilege and the work product doctrine are long-held, venerated components of our legal system.  See Upjohn Co. v. United States, 449 U.S. 383, 389, 397-98 (1981); Hickman v. Taylor, 329 U.S. 495, 511 (1947).  Such protections are not absolute, but they should not be disregarded lightly.  We do not dismiss McFarland's legitimate concern regarding litigation costs, but ultimately conclude that this factor also favors Firstline.

### 3. *Judicial Economy*

As with the prejudice consideration, both sides present nonfrivolous arguments regarding judicial efficiency and economy of resources.  Firstline contends that this factor supports severance because resolution of the breach of contract claim in Firstline's favor would moot the bad faith claim.  Firstline also maintains that if the claims move forward together, there will be complex discovery disputes regarding confidential or privileged information that will bog down the

case's progress. McFarland raises the obvious concern that separating these claims and requiring staggered discovery and trial may double the length of the litigation.

We disagree with Firstline's initial contention. It is true that an insurer's success on a coverage claim will often nullify a bad faith claim because the insurer will have proven that it had a reasonable basis to deny coverage. But that is not always the case. Pennsylvania law is clear that bad faith claims can exist independent of the coverage dispute, particularly when the purportedly wrongful actions by the insurer involve conduct other than improper claims denial. See Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005) (collecting cases); Condio v. Erie Ins. Exch., 899 A.2d 1136, 1142-43 (Pa. Super. Ct. 2006); O'Donnell *ex rel.* Mitro v. Allstate Ins. Co., 734 A.2d 901, 906 (Pa. Super. Ct. 1999) ("[S]ection 8371 is not restricted to an insurer's bad faith in denying a claim. An action for bad faith may also extend to the insurer's investigative practices."). McFarland has alleged wrongful conduct by Firstline separate from denial of coverage, such as failing to properly or promptly investigate the claim, failing to timely consider expert opinions, disregarding supporting evidence provided by McFarland, making unreasonable investigation requests on the insured, and misrepresenting the coverage owed under the policy.[3] (See Doc. 1-4 ¶ 83). These claims, if proven, could

---

[3] We note that McFarland's pleading underscores the distinction between the instant breach of contract and bad faith claims and the respective evidence that would tend to prove each. Information, communications, or testimony in support of these bad faith allegations would be largely irrelevant to the issue of coverage.

support a finding of insurance bad faith even if Firstline's denial of coverage is ultimately determined to have been appropriate.

We are likewise unconvinced by Firstline's discovery-dispute argument. We do not doubt that simultaneous discovery would likely engender disagreements regarding attorney-client privilege and confidentiality, but such disputes alone are not sufficient to compel severance of the bad faith claim. See Amitie One Condo. Ass'n v. Nationwide Prop. & Cas. Ins. Co., No. 1:07-CV-1756, 2010 WL 1052911, at *1 n.3 (M.D. Pa. Mar. 22, 2010) (Conner, J.). We find McFarland's position on this specific factor more convincing.

On balance, the factors favor Firstline's request for claim separation. Nonetheless, we see no need for severance when bifurcation under Rule 42(b) will suffice. The considerations are largely the same, and Firstline's motion for severance suggests bifurcation as an alternative.[4] We will also stay discovery on the bad faith claim to protect Firstline's rights regarding attorney-client privilege and work product.

We are cognizant that our determination runs counter to certain district court decisions in this circuit denying severance or bifurcation of insurance breach of contract and bad faith claims. But the decision to order separate discovery and trials lies within this court's broad discretion and must be determined on a case-by-case basis. See Lis v. Robert Packer Hosp., 579 F.2d 819, 824 (3d Cir. 1978) (citation

---

[4] Even if Firstline had not suggested bifurcation, the court may bifurcate claims *sua sponte*. See FED. R. CIV. P. 42(b); 9A WRIGHT & MILLER, *supra*, § 2388.

omitted).  We hold that, under the particular circumstances of *this* case, the relevant factors militate in favor of bifurcation.

**B.     Motion to Quash Notice of Deposition and for Protective Order**

The resolution of the motion to sever and to stay informs our determination of Firstline's motions regarding the deposition of Attorney Speaker.  Because we have decided to bifurcate and to stay discovery on the bad faith claim, whether Attorney Speaker should be deposed at this time is viewed through the singular lens of the breach of contract claim.

A party from whom discovery is sought may move for a protective order to avoid "annoyance, embarrassment, oppression, or undue burden or expense[.]" FED. R. CIV. P. 26(c)(1).  In the context of deposing counsel, "undue burden" or "oppression" is measured by (1) the extent to which the deposition will "focus on central factual issues"; (2) whether the information sought is available through other sources or means of discovery; and (3) "the harm to the party's representational rights resulting from the attorney's deposition."  Frazier v. SEPTA, 161 F.R.D. 309, 313 (E.D. Pa. 1995).  The movant bears the burden of demonstrating that "good cause" exists for the protective order.  *In re* Avandia Mktg., Sales Practices & Prods. Liab. Litig., 924 F.3d 662, 671 (3d Cir. 2019).  Courts in this circuit do not apply a *per se* heightened standard on a party seeking to depose counsel.  Rather, "the request to depose a party's attorney must be weighed by balancing . . . the necessity for such discovery in the circumstances of the case against its potential to oppress the adverse party and to burden the adversary

10

process itself." Johnston Dev. Grp., Inc. v. Carpenters Local Union No. 1578, 130 F.R.D. 348, 352 (D.N.J. 1990).

McFarland repeatedly asserts that Attorney Speaker is a necessary fact witness and thus his deposition is appropriate. McFarland claims, without support, that Attorney Speaker acted as "Firstline's investigator of the facts." (Doc. 19 at 3). Firstline denies this assertion, averring that at no time did Attorney Speaker investigate or acquire personal knowledge of the retaining wall collapse or its resultant damage other than that which he obtained through attorney-client communication during representation. McFarland argues that it needs Attorney Speaker's "thoughts and reasoning as to why certain information was or was not included in the denial letters," knowledge of the cause and extent of the loss, and reasons why "certain information was disregarded" and the claim ultimately denied. (Doc. 19 at 12-13). This information is either irrelevant to the breach of contract claim, privileged, discoverable through other means, or a combination thereof.

The case law on which McFarland relies is inapposite.[5] In each of those cases, there was a legitimate question whether the attorney whose deposition was sought had personal knowledge of relevant, non-privileged facts that could not otherwise be discovered. McFarland has not identified any relevant information

---

[5] See generally Johnston Dev. Grp., Inc., 130 F.R.D. 348; Fleming Steel Co. v. Jacobs Eng'g Grp., No. 2:16-CV-727, 2017 WL 6539309 (W.D. Pa. Dec. 21, 2017); Adeniyi-Jones v. State Farm Mut. Auto. Co., No. 14-7101, 2015 WL 6180965 (E.D. Pa. Oct. 21, 2015); Musko v. McCandless, No. 94-3938, 1995 WL 580275 (E.D. Pa. Sept. 29, 1995).

11

that Attorney Speaker may have about the breach of contract claim that would not be privileged or obtainable through other means of discovery.  McFarland has candidly acknowledged that it does not believe that Attorney Speaker has any "first[-]hand knowledge" regarding "the collapse."  (Doc. 18, Ex. B at 2).  Furthermore, that Attorney Speaker authored letters denying coverage and setting forth Firstline's reasons for its denial has no bearing on whether his deposition is necessary on the breach of contract claim.  The practice of insurers consulting with their attorney regarding coverage and having their attorney communicate with the insured is quite commonplace and does not transform Attorney Speaker into a fact witness.

In sum, McFarland has failed to identify any permissible basis or need to depose Attorney Speaker on the coverage claim.  Firstline, on the other hand, has raised legitimate concerns regarding the effect of such a deposition on Firstline's rights and the adversary process generally.  Most significantly, Firstline cautions that permitting the deposition of Attorney Speaker may create a conflict that disqualifies him from continuing to represent Firstline.  McFarland readily admits that disqualification may result from Attorney Speaker's deposition and possible trial testimony.  (See Doc. 19 at 11).  We will therefore conditionally grant Firstline's motion for a protective order and to quash the notice of deposition.  If and when the coverage claim is resolved, McFarland may reassert its request to depose Attorney Speaker on the bad faith claim.

## IV. **Conclusion**

We will grant in part and deny in part Firstline's motion (Doc. 12) to sever and to stay the bad faith claim. We will bifurcate the claims and stay discovery on the bad faith claim until the breach of contract dispute is resolved. We will also conditionally grant Firstline's motion (Doc. 16) for a protective order and to quash the notice of deposition. An appropriate order will issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: July 25, 2019